bankruptcy provided for in this statute. The conveyance was made May 1, 1839, and the act did not pass until August 19, 1841. There could not, therefore, be any such contemplation of bankruptcy supposed in this case as is guarded against by the provisions of this section. Moreover, if the section does extend to all intended fraudulent conveyances made by insolvents, or those in failing circumstances, the clause immediately succeeding denotes that such persons are notwithstanding to be declared bankrupts, for the essential remedy against such fraud is dependent upon such decree. The section proceeds, "And the assignee under the bankruptcy shall be entitled to claim, sue for, recover, and remove the same as part of the assets of the bankruptcy." This remedial provision will be nugatory without a decree of bankruptcy, and accordingly in neither point of view would the fact that the conveyance of May 1, 1839, was fraudulent, be proper matter to bar such decree.

The judgment confessed by the petitioner to his mother is put upon his schedule as a valid and subsisting debt, and it is one objection, on the part of creditors, that this is a false list of the petitioner's creditors, and the amount due to each, this judgment not resting on a bona fide consideration. The reply to this objection is that the judgment is not rendered void by the bankrupt act, because it was a security given before the statute was passed, and, by the express words of the second section, that avoids such securities only when made in futuro; and accordingly it stands affected only by the general rules of law. By those rules, most clearly, it is a valid and indisputable indebtedness, as against the petitioner. He is concluded from denying the debt, and, however destitute of valuable consideration it might have been in its origin, yet, as between himself and the judgment creditor and his representatives, it must be recognized by him as a debt he is liable to discharge. He accordingly properly put the holder of the judgment in the list of his creditors. This responsibility is, however, attached to himself, and the property he may possess after all his debts are discharged. If the judgment is without legal or fair consideration, it is mere waste paper as against his other creditors or his assignee in bankruptcy.

Under the views, therefore, I take of this case, I must overrule the objections; but as it appears to me there is strong probable cause for the opposition taken to the proceedings of the bankrupt, this order will be connected, with the condition that the creditors have leave, if they elect so to do, to file the objections now interposed to the bankruptcy of the petitioner, to the allowance of his discharge and certificate, and that the proofs already taken may be used by either party on the hearing of the objections to that decree. No costs are allowed to either party.

## Case No. 11,922.

### In re ROBERTSON.

[See Case No. 11,921.]

---

## Case No. 11,923.

### The ROBERTSON.

[8 Biss. 180;[1] 10 Chi. Leg. News, 220.]

District Court, E. D. Wisconsin. March, 1878.[2]

MARITIME LIENS—SUBROGATION—PAYMENT OF DECREE.

1. This vessel, while in a foreign port, was seized for supplies furnished. The libellant in this case, at the request of the owner, signed the usual stipulation for the release of the vessel, and afterwards paid the amount which was decreed against the vessel: *Held*, that by signing such stipulation and paying such decree he did not become subrogated to the rights of the former libellant so as to acquire a lien upon the vessel, and that the libel could not be maintained.

2. A distinction exists between an actual advancement of money to clear off a lien, with a resulting hypothecation of the ship to the person making such advancement, and the act of joining with the principal debtor in an obligation to pay at a future time upon certain contingencies.

In admiralty. Libel by William Young against the steam barge Robertson to recover $368.13, which he had paid on a decree against him as surety on a bond given to release the barge from seizure under a former libel for supplies.

Van Dyke & Van Dyke, for libellant.
H. H. Markham, for respondents.

DYER, District Judge. On the 14th day of August, 1876, the steam barge Mary R. Robertson, a foreign craft, hailing from a Canadian port, and owned by Frederick A. Robertson, was at the port of Milwaukee, and was there seized under a monition issued out of this court upon a claim for supplies furnished the vessel by Frederick G. McDowell and others. The owner interposed his claim of ownership in the action, and being a stranger at the port of Milwaukee, and without money or credit, applied to the present libellant to sign a stipulation for the release of the barge from the custody of the marshal, and thus enable her to proceed on her voyage. Upon repeated solicitations, and upon the understanding with the owner that he should have—and in the belief that by operation of law he would have—a lien upon the barge, the libellant, Young, executed the required stipulation, which was filed in the proceedings then pending, and the barge was enabled to proceed upon her then pending voyage. By virtue of the stipulation thus made, Young became liable to pay the claim of the original libellants if decree should be rendered in their favor. Subsequently such a

---

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

[2] [Affirmed by circuit court; case unreported.]